**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| DANA HILDRETH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19 CV 58 DDN |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Dana Elizabeth Hildreth for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons set forth below, the decision of the Commissioner is affirmed.

## BACKGROUND

On September 27, 2016, at age 51, plaintiff applied for disability insurance benefits under Title II of the Social Security Act.  She alleged she became disabled on September 15, 2016, due to scoliosis of the spine and degenerative disc disease. (Tr. 163, 167.)  Plaintiff's claim was denied initially. An administrative law judge ("ALJ") held a *de* novo hearing on June 19, 2018.  On September 28, 2018, the ALJ found her not disabled. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review.

## ADMINISTRATIVE RECORD

The following is a summary of plaintiff's medical and other history relevant to her appeal. Plaintiff underwent spinal surgeries in 2009 and 2013. (Tr. 240-41, 258-68.)  During the relevant

period in this case, plaintiff received treatment from Thomas Highland, M.D., with regular follow-up appointments for back and leg pain. (Tr. 541-621.)  She often showed normal ranges of motion and normal gait at these appointments.  The medical notes also show that she  experienced pain over her left elbow and the length of her left lower extremity.  (Tr. 591, 571, 568, 566, 563, 562, 554.)

### ALJ Hearing

On June 19, 2018, plaintiff appeared and testified to the following at a hearing before the ALJ.  She lives with her husband and a 16-year-old daughter.  Plaintiff is five feet four inches tall and left-handed.  She drives and drove herself to the hearing.  She graduated from high school.

Plaintiff testified she last worked in 2015, owning and operating a retail clothing store, renting tuxedos and printing tee-shirts.  The store sold athletic apparel, boots, and kitchen gadgets.  She had been also employed as the office manager of the Mobile Medical Clinic.  She checked patients into the clinic, recorded vital signs, ordered supplies, kept rooms stocked, did insurance billing and coding.  For a trash company she worked as a marketing manager.  She also sold real estate as a licensed broker.

She testified she cannot do the real estate work anymore, because it required her to drive and some days after taking her medication, she cannot drive.  She had been taking pain medication for her spine daily for two or three weeks before the hearing.  She takes Norco every six hours as needed on her bad days and over-the-counter pain medication when she can.  She has pain that radiates down her right leg from her lumbar spine down to the arch of her foot where it might tingle.  This pain is mostly on her right side, but occasionally on the left.

Plaintiff testified she also has pain, tingling, and numbness down her right arm and hand.  She has difficulty using her right hand when it is numb from use.

To alleviate her pain, she walks daily (a half-mile in the morning and a half-mile in the evening), does physical therapy daily, and swims when she can.  She also takes strengthening classes at the YMCA for her core and back strength.  Plaintiff testified that relaxing two or three times a day (for 30 to 45 minutes or longer) also helps a lot.

Plaintiff testified about her two fusion surgeries and feels she needs another one, but is holding it off as long as possible.

On her bad days, which she has once or twice a week, she takes her medication.

Plaintiff testified about seeing Dr. Thomas Highland every two months, but more often when needed.   She can sit for up to an hour before needing to get up for an hour and a half and then sit or lay down to relieve the pressure on her spine.  She also uses heat and ice packs.

She testified that her retail store closed because she could not do the required work any longer.  On average, the severity of her pain is at a 5 or 6 on a scale of 0 to 10.

A Vocational Expert also testified at the hearing.  The VE classified plaintiff's past work as a retail store owner, as a real estate agent, and as a sales representative as requiring light exertion and as skilled work.  Plaintiff's work as a doctor's office clerk was described as sedentary and semi-skilled.

The Administrative Law Judge asked the VE to assume a person of plaintiff's age, education, and work experience, with the following abilities and limitations:

(a)  able to perform light work;

(b) occasionally push or pull with both upper extremities, but never be able to operate foot controls with the right lower extremity;

(c)  never climb ladders, ropes or scaffolds, but who can occasionally climb ramps or stairs;

(d)  occasionally balance on narrow, slippery or erratically moving surfaces;

(e)  occasionally stoop, crouch, and kneel, but never crawl;

(f)  never reach overhead with both arms;

(g)  able to handle objects,

(h)  able to frequently do gross manipulation bilaterally;

(i)  able to frequently do fine manipulation of items no smaller than a paperclip with both hands;

(j)  able to feel with both upper extremities;

(k)  never use hazardous machinery, never be exposed to unshielded moving mechanical parts;

(l)  never be required to operate a motor vehicle as part of a work function; and

(m)  have no exposure to unprotected heights.

The ALJ asked the VE whether such a person could perform plaintiff's past relevant work.  The VE responded that this person could perform plaintiff's past job as the doctor's office clerk.  The VE also testified that there were transferrable skills in plaintiff's other past work.

Next, the ALJ asked the VE whether the hypothetical person could perform other work in the national economy.  The VE answered in the affirmative with the following examples of light and unskilled work the person could perform:  router, electrical assembler, and mail clerk.

The ALJ then asked a second hypothetical question using the same characteristics of the hypothetical person, plus the limitation that the person could remember, understand, and carry out only simple routine instructions and tasks at SVP levels 1 and 2 type jobs.  With these characteristics, the ALJ asked whether all of plaintiff's past relevant work would be eliminated. The VE answered this question in the affirmative.

The ALJ then asked a third hypothetical question, enquiring whether the other described jobs in the national economy could be performed by the hypothetical person.  The VE answered in the affirmative.

The ALJ then asked the VE a fourth hypothetical question:  Assuming plaintiff's age, education, work experience, and all the characteristics listed in the first hypothetical question, and further assuming the person was limited to sedentary work that is simple at SVP levels 1 and 2, could that person perform any of plaintiff's past relevant work.  The VE answered that the person could perform the work of the doctor's office clerk, with transferrable skills.  The transferrable skills included preparing sales contracts, preparing closing statements, quoting purchase prices, reviewing trade journals, and preparing property descriptions.  The VE also testified that the occupations that the hypothetical person could perform were cost clerk and invoice clerk.

The VE, in answer to a fifth and last hypothetical question, assuming the same circumstances as the second hypothetical question and the subject performing only sedentary work, stated that the subject could not perform plaintiff's past work.

In response to a hypothetical question from plaintiff's counsel, the VE stated that, if the second hypothetical person required additional work breaks that amounted to being 20 percent off-task, or would miss two or more days of work per month, there is no work in the national economy that the person could perform.

## DECISION OF THE ALJ

On September 28, 2018, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 10-23.)  At Step One, the ALJ found that plaintiff had not performed substantial gainful activity since September 15, 2016, her alleged onset date. (Tr. 12.)  At Step Two, the ALJ found that plaintiff had the severe impairments of degenerative disc disease of the cervical, thoracic and lumbar spines with radiculopathy, idiopathic scoliosis, spinal stenosis at L2-L3, and spondylolisthesis at L2-L3. *Id.*  At Step Three, the ALJ found that plaintiff did not have an

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ determined that plaintiff had the following Residual Functional Capacity (RFC): Plaintiff could perform light work with the following limitations:

(a)  only occasionally push or pull with her arms and hands;

(b)  never operate foot controls with her right lower extremity;

(c)  never climb ladders, ropes or scaffolds;

(d)  only occasionally climb ramps or stairs;

(d)  only occasionally balance on narrow, slippery or erratically moving surfaces;

(e)  only occasionally stoop, crouch, and kneel, but never crawl;

(f)  never reach overhead with her upper extremities;

(g)  can frequently handle objects in gross manipulation;

(h)  can frequently engage in fine manipulation of objects no smaller than a paperclip;

(i)  can frequently feel with both upper extremities;

(j)  cannot use hazardous machinery;

(k)  must avoid all exposure to unshielded moving mechanical parts;

(l)  must not drive any motor vehicle;

(m)  must avoid all exposure to unprotected heights; and

(n)  must remember, understand, and carry out only simple and routine instructions and tasks with SVP level 1 and 2 type jobs.  (Tr. 13-14.)

At Step Four, with this RFC the ALJ found that plaintiff was unable to perform any of her past relevant work. (Tr. 21.)  But based upon the testimony of the vocational expert, the ALJ found that plaintiff's impairments would not preclude her from performing other work that exists in the national economy in substantial numbers, specifically, router, electrical assembler, and mail clerk. (Tr. 21-22.)

## GENERAL LEGAL PRINCIPLES

The Court's role in judicial review of the Commissioner's final decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009).   "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the commissioner's conclusion." (*Id.*)   In

determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). If substantial evidence supports the decision, the Commissioner may not be reversed merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to benefits, a claimant must prove she is unable to perform any substantial gainful activity, in the national economy due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(d)(1)(A); *Pate-Fires*, 564 F.3d. at 942. A five-step process is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing the five-step process); *Pate-Fires*, 564 F.3d at 942.

## DISCUSSION

The only substantial issue before the Court is whether the ALJ's finding that plaintiff's Residual Functional Capacity is based on substantial evidence.

### Residual Functional Capability

RFC is defined as the most a claimant can do despite both her mental and physical limitations, that is, the degree in which the plaintiff's symptoms affect her ability to work. 20 C.F.R. § 404.1545(a).

Plaintiff argues the ALJ failed to properly assess her limitations by relying on two isolated treatment notes regarding the use of pain medication while effectively discounting her extensive attempt to alleviate pain including spinal surgeries, and because he failed to point to specific inconsistencies between her statements and the record as a whole including objective evidence, and her daily activities. (Doc. 11 at 2.) Plaintiff argues further that the ALJ afforded only partial weight to the three treating physician opinions of Dr. Highland, based on inconsistencies that did not exist and conclusory statements, without support from the record. *Id.*

### A. Treatment Record

6

The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of her limitations. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003).

In considering the claimant's symptoms, the ALJ must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment—i.e., an impairment that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms. *Id.*

Second, once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *Id.*

The ALJ found that the plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms. (Tr. 15.)  However, the ALJ found the plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms was not entirely consistent with the medical evidence and other evidence in the record. *Id.*

Plaintiff argues that the ALJ's first reason for discounting her statements was based on two treatment notes stating that at those times, she was not taking pain medication "which suggests that the medications were not needed." (Tr. at 15.)  Plaintiff argues that the ALJ's reliance on those two isolated treatment notes was inappropriate on comparison to the treatment record as a whole.

Though it is true that the ALJ relied on the fact that the plaintiff had not taken medication at times, this was not the sole basis of the ALJ's determination.  The ALJ acknowledged that at times plaintiff showed limited ranges of motion in her back and reported pain with straight leg raises. (Tr. 18-19.)  However, the ALJ also found, that over four appointments for back and leg pain in 2017, Dr. Highland, plaintiff's treating physician, recorded mostly unremarkable examination findings, including normal gait without an assistive device, normal ranges of motion, and normal strength.  (Tr. 552, 590.)

Relatedly, the ALJ considered plaintiff's course of treatment, finding that plaintiff's symptoms were reduced to a tolerable level by treatment during the relevant period.  Plaintiff visited Dr. Highland approximately every two months in 2017 and 2018 for follow-up appointments regarding back and leg pain. (Tr. 18, 512.)  After receiving treatment for leg pain in

December 2016, plaintiff felt "100% better" and reported "no pain" at all. (Tr. 18, 609.) Although she reported some increased pain over the next few months, she said she could tolerate her pain in May 2017 and rated it only 1 out of 10 in August 2017. (Tr. 18, 571, 591.) At her appointment in October 2017, she reported she could live with her symptoms. (Tr. 18, 562.)  She again reported in April 2018, that she could live with her pain and that she did not want to pursue surgery. (Tr. 19, 623.)  A pattern of conservative treatment may erode the reliability of a claimant's debilitating complaints. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015).  And an impairment that can be controlled by treatment or medication cannot be considered disabling. *Hensley v. Colvin*, 829 F.3d 926, 933-34 (8th Cir. 2016).

Plaintiff argues that the ALJ's summary and ultimate conclusions about her course of treatment were insufficient to discount her complaints of pain. (Doc. 11 at 6-7.)  Plaintiff bases this on the rapid worsening of her symptoms and related surgeries in 2009 and 2013.  *Id.*  Plaintiff again discussed surgery with Dr. Highland due to the severe and marked abnormalities shown on diagnostic imaging, though she had not pursued this option a third time. *Id.* Plaintiff further points to receiving numerous injections, medial branch blocks, narcotic pain medications, physical therapy, and the use of heat and ice. *Id.*  Relying on *Paubel v. Astrue*, 2011 WL 1226964, at *14 (E. D. Mo. 2011), plaintiff argues that evidence of surgical history and consistent treatment with multiple pain medications over a period of years is evidence that supports her statements concerning the intensity, persistence and limiting effects of her symptoms. (Doc. 11 at 7.)

The absence of an objective medical basis which supports the degree of severity of subjective complaints is just one factor to be considered in evaluating the credibility of the testimony and complaints.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.   *Id.*  However, the ALJ is not required to discuss methodically each *Polaski* factor, so long as he acknowledged and examined those considerations before discounting the claimant's subjective complaints. *Paubel*, 2011 WL 1226964 (citing *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000)).

As stated above, the ALJ provided many specific examples to support his conclusion that plaintiff's impairments were amenable to a conservative course of treatment during the relevant period. (Tr. 18-19.)  Furthermore, as plaintiff acknowledges, she chose to forego additional surgery during the relevant period in favor of more conservative treatment. (Doc. 11 at 7.)  The ALJ discussed in detail plaintiff's treatment for her back complaints, noting that she ultimately reported that her symptoms were made tolerable by conservative treatment. (Tr. 19.)  Thus, the ALJ's evaluation of plaintiff's condition is supported by the record as a whole.

### B. Dr. Highland's Opinions

Dr. Highland issued three treating source statements. (Tr. 19.)  The first one was dated January 10, 2017, to which the ALJ gave partial weight. (Tr. 19, 529.)  Dr. Highland reported that plaintiff was diagnosed with degenerative disc disease of the lumbar spine, idiopathic scoliosis, thoracolumbar spine, spinal stenosis, spondylolisthesis, degenerative disc disease, thoracic spine, and degenerative disc disease of the cervical spine. (Tr. 529-531.)  Dr. Highland reported that plaintiff had pain in her back with pain down her legs. *Id.*  He further reported that she had pain in the midback and pain radiating out underneath both ribs in the midthoracic area. *Id.*  He also reported that plaintiff had pain in her neck with numbness and tingling down both arms. *Id.*  Dr. Highland reported that plaintiff had diminished sensation and weakness in her upper extremities due to her cervical disc disease, diminished reflexes in both lower extremities due to her lumbar stenosis, and nerve root tension signs with straight leg raising. *Id.*  Dr. Highland reported that her thoracic and cervical spines have been treated conservatively thus far, but she is possibly looking at surgery and that she takes narcotic medication to diminish her pain, which makes her sleepy. *Id.*

Although the ALJ found the January 10, 2017 opinion supported the RFC in some respects, the ALJ found some inconsistencies. (Tr. 19.)  Dr. Highland opined that plaintiff can never twist, stoop, balance, crouch or crawl, whereas the RFC limits her to no crawling which is supported by the nature of her pain and overall back condition. (Tr. 19-20, 530-31.)  The ALJ further found Dr. Highland's remarks that plaintiff should never be allowed occasional stooping, balancing and crouching to be inconsistent with the relief that she received from injections and other treatment. *Id.*  Furthermore, the ALJ found Dr. Highland's opinion that plaintiff can stand 20 minutes at a time and sit for 2 hours of an 8-hour day was without elaboration or explanation. *Id.*  Lastly, the ALJ found Dr. Highland's opinion that plaintiff can stand for 2 hours of an 8-hour day, needs

unscheduled breaks, needs to use a cane, and will miss three days or more of work was inconsistent with the evidence. *Id.* Plaintiff argues that other than citing the absence of a cane requirement in the record, the ALJ failed to point to any other inconsistency between the medical record and Dr. Highland's opinion about her functioning. (Doc. 11 at 11.)

As mentioned earlier, the ALJ found inconsistencies not only regarding the need of a cane, but also that Dr. Highland's statements that plaintiff could never perform any postural actions were inconsistent with her reports regarding her treatment. The ALJ found that plaintiff's treatment with Dr. Highland generally showed that conservative care during the relevant period worked to ameliorate her symptoms. (Tr. 20.)  "Generally, the more consistent an opinion is with the record as a whole, the more weight [an ALJ] will give to that opinion."  20 C.F.R. § 404.1527(c)(4). Thus, the ALJ gave good reasons for giving only partial weight to the first medical opinion of Dr. Highland.

The second opinion by Dr. Highland, dated March 9, 2017, was given little weight by the ALJ. (Tr. 20.) In large part, it recites plaintiff's medical history. (Tr. 533-34.)  Dr. Highland reported that he had told her to avoid any significant activity, including significant bending, lifting, or prolonged sitting so she can put off surgery in the cervical and thoracic areas. *Id.* Dr. Highland then opined that her spinal conditions prohibit her from pursuing gainful employment including any type of light duty. *Id.* The doctor's statement that she was unable to work due to her conditions is not a medical opinion, but rather an administrative finding for the ALJ to make.  (Tr. 20.)

Plaintiff acknowledges that Dr. Highland's conclusion that she is unable to pursue gainful employment is an issue reserved for the Commissioner.  However, she argues that the remaining portions of his letter report explains the significant limitations contained in Dr. Highland's other two medical opinions. (Doc. 11 at 12.)  Ultimately, the ALJ found that plaintiff's treatment by Dr. Highland showed that conservative care during the relevant period worked to improve her symptoms.  Thus, the ALJ could grant this opinion minimal weight due to its inconsistency with the medical records.

The ALJ considered that the third opinion, dated May 2018, was similar to the first opinion and also granted it partial weight. (Tr. 20.)  Dr. Highland reported clinical findings that plaintiff had a "very" limited range of motion in her back. (Tr. 20, 628.)  The ALJ found this inconsistent with the record of her "limited" or full range of motion in her back. (Tr.20.)  The ALJ also viewed

10

Dr. Highland's opinion that the claimant would be off task 20% of the time to be without explanation because there "are simply no clinical or other findings to support this opinion." *Id.*

Plaintiff argues that the ALJ's specific language used to describe her degree of limitation in range of motion of the back is inadequate to discount a significant portion of the opinion because these statements are not inconsistent. (Doc 11 at 12-13.)  She argues that with her condition, it is reasonable that the severity of limited range of motion would vary. *Id.*  Furthermore, plaintiff argues that Dr. Highland's opinion is supported by the MRIs that showed significant, severe, and marked abnormalities. *Id.*

Regardless of the language in Dr. Highland's report, the ALJ found Dr. Highland's remarks that plaintiff should never be allowed occasional stooping, balancing and crouching, or the duration to which plaintiff can sit or stand to be inconsistent with the record. (Tr. 20, 629-30, Doc. 14 at 6-7.)

The ALJ also granted partial weight to the opinion of Frederick Simowitz, M.D. dated December 27, 2016. (Tr. 20, 76.)  Dr. Simowitz diagnosed plaintiff with disorders of the back (degenerative disease), curvature of the spine, and spinal disorders. (Tr. 20, 73.)  Dr. Simowitz opined that these impairments are severe, and the ALJ gave this opinion partial weight; it is consistent with the overall medical evidence in the record. *Id.*  Dr. Simowitz also opined that plaintiff can perform light work, stand and/or walk with normal breaks for a total of 6 hours in an 8-hour day and sit for in 6 hours in an 8-hour day. (Tr. 20, 74.) Dr. Simowtiz's postural limitations support the RFC and were generally given great weight. *Id.*  However, because crawling requires getting down and getting back up completely, the ALJ limited plaintiff's crawling to "never" which is more restrictive than Dr. Simowitz's opinion. (Tr. 20-21.)  However, the ALJ also found in Dr. Simowitz's opinion that there were no manipulative restrictions inconsistent with subsequent evidence. *Id.*  Overall, the ALJ gave Dr. Simowtz's opinion partial weight. *Id.*

Plaintiff argues that Dr. Simowitz's opinion is insufficient to support the RFC. Specifically, plaintiff points to Dr. Simowitz not having an opportunity to review significant evidence demonstrating a deterioration of conditions, as shown in all three of Dr. Highland's medical opinions.  Further, the diagnostic imaging revealed marked and severe abnormalities of the spine. (Doc. 11 at 14-15.)  Relying on *Carder v. Berryhill*, 2018 WL 4184327 (E. D. Mo. 2018), plaintiff argues that the ALJ erred in relying on Dr. Simowitz's opinion, because he did not have access to

the treating physician's treatment notes, records from a hospitalization, or the extensive observations made during plaintiff's numerous community-based services. *Id.*

An ALJ may credit the opinion of a non-examining or non-treating medical provider over the assessments or notes of the treating physician. *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "Because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may between a report and the ALJ's decision in reliance on it." *Chandler v. Comm'r of Soc. Sec'y*, 667 F.3d 356, 361 (3d Cir. 2011); s*ee Hooper v. Astrue*, 2012 WL 7054007 (E. D. Mo. 2012). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). Although Dr. Simowitz did not review Dr. Highland's opinions, the ALJ did and lawfully gave it partial weight.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

**/s/   David D. Noce**
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 14, 2020.